IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASLAM SHAHID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 8330 |
| | ) | |
| GOVERNORS STATE UNIVERSITY, | ) | Honorable Judge John Robert Blakey |
| | ) | |
| Defendant, | ) | Presiding |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S COMPLAINT**

The Defendant, GOVERNORS STATE UNIVERSITY by and through its attorney LISA MADIGAN, Attorney General of Illinois, hereby responds to Plaintiff's Complaint as follows:

**Introduction**

1. Plaintiff Aslam "Sam" Shahid seeks redress for religious discrimination, racial, national origin, and ancestry discrimination. This case is brought for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981.

**ANSWER:** Admit.

**Jurisdiction**

2. Jurisdiction of this Court is provided by 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Admit.

3. On February 12, 2015, Plaintiff timely filed a charge of racial discrimination, religious discrimination, and national origin discrimination with the EEOC. (See Exhibit 1.)

**ANSWER:** Admit.

4. On June 25, 2015, Plaintiff received a Notice of Right To Sue. (See Exhibit 2.)

**ANSWER:** Defendant admits that the EEOC issued a Notice of Right to Sue on June 23, 2015 but Defendant lacks the knowledge or information sufficient to form a belief as to the truth of when the Plaintiff received the Notice of Right to Sue.

5. Venue is proper in this judicial district because the Defendant resides here, and all of the events occurred here.

**ANSWER:** Admit.

## The Parties

6. Plaintiff is a South Asian Muslim of Pakistani national origin. He worked for Defendant in the Northern District of Illinois.

**ANSWER:** Admit.

7. Defendant, Governors State University ("GSU"), is an Illinois state university doing business in the Northern District of Illinois. At all relevant times, Defendant has had more than 500 employees.

**ANSWER:** Admit.

## Facts Upon Which Claims Are Based

8. Plaintiff has been teaching Information Technology ("IT") at the college level since 2002. Plaintiff has been teaching Computer Science at the college level since 2006.

**ANSWER:** Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9. Plaintiff began working for GSU in 2007 as an Adjunct Professor in GSU's Computer Science Department. During his interview for the Adjunct Professor position, Plaintiff showed his IT Certification in Information Assurance I (Security+), and a second IT Certification in Security Awareness (ITAA), to Dr. Shih and Dr. D'Arcy. At that time, Dr. D'Arcy was the Chair of the Science Division, and Dr. Shih was a Professor in the Computer Science Department. The Computer Science Department was part of the Science Division. Based in part on his IT Certifications, Plaintiff was hired to teach undergraduate and graduate courses at GSU starting in 2007. Dr. D'Arcy was reluctant to hire Plaintiff to teach graduate courses until she saw his IT Certifications.

**ANSWER:** Defendant admits that Plaintiff began working for GSU in 2007 as a part-time adjunct professor. Defendant admits that at that time, Dr. D'Arcy was the Chair of the Science Division, and Dr. Shih was a Professor in the Computer Science Department. Defendant admits that the Computer Science Division is in the College of Arts and Sciences. Defendant admits that Plaintiff was hired to teach undergraduate and graduate courses at GSU in 2007. Defendant denies the remaining allegations in Paragraph 9.

10. Plaintiff became a part-time University Lecturer in GSU's Computer Science Department 2010.

**ANSWER:** Defendant admits that Plaintiff became a part-time University Lecturer in GSU's Science Department but denies the remaining allegations in Paragraph 10.

11. Since 2007, Plaintiff has been the only Muslim working in GSU's Computer Science Department.

**ANSWER:** Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12. Since 2007, no other employees in GSU's Computer Science Department have self-identified themselves as being Muslim.

**ANSWER:** Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13. Since 2007, Plaintiff has been the only person of South Asian race or ancestry or Pakistani national origin working in the GSU's Computer Science Department.

**ANSWER:** Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14. Since 2007, no other employees in GSU's Computer Science Department have self-identified themselves as being of South Asian race or ancestry or Pakistani national origin.

**ANSWER:** Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15. In October 2014, GSU posted a job announcement for a full-time position in the Computer Science Department: University Lecturer, Information Technology. (See Exhibit 3.) Plaintiff applied for that position.

**ANSWER:** Admit.

16. Richard Manprisio also applied for the position. He is White, non-Muslim, non-Pakistani.

**ANSWER:** Admit.

17. GSU selected Plaintiff to interview for the position, because he satisfied the "minimum qualifications" listed on the job announcement.

**ANSWER:** Admit.

18. The first requirement listed on the job announcement was a "Master's Degree in Computer Science, Information Technology, or related field." This was listed as a "minimum qualification." Throughout GSU's hiring process relating to the full-time University Lecturer position (Exhibit 3), Plaintiff was more qualified than Mr. Manprisio in this category. Plaintiff received his Master of Science in Computer Science degree from GSU in 2002. Mr. Manprisio did not have a Master of Science in Computer Science degree or a Master of Science in Information Technology degree; he had a Master in Project Management degree. A Master in Project Management degree has nothing substantively to do with Computer Science or IT; thus, Mr. Manprisio's degree was not in a "related field."

**ANSWER:** Defendant admits that the first minimum qualification listed on the job announcement was a "Master's Degree in Information Technology, Computer Science, or related field." Defendant admits that Plaintiff received his Master of Science in Computer Science degree from GSU in 2002. Defendant admits that Mr. Manprisio did not have a Master of Science in Computer Science degree or a Master of Science in Information Technology degree and further admits that Manprisio has a Master in Project Management degree. Defendant denies the remaining allegations in Paragraph 18.

19. The second requirement listed on the job announcement was "Current Professional Certification in at least two of the following areas: MS Server, Cisco, IT Security, Virtualization, CISSP." This was listed as a "minimum qualification." Throughout GSU's hiring process relating to the full-time University Lecturer position (Exhibit 3), both candidates were equally qualified in this category. They both had IT Certifications in IT Security, but neither had IT Certifications in MS Server, Cisco, Virtualization, or CISSP. Plaintiff had an IT Certification in Information Assurance I (Security+), and a second IT Certification in Security Awareness (ITAA). (See Exhibit 4.) Plaintiff received his IT Certifications through the Center for Systems Security and Information Assurance (CSSIA), which is a National Science Foundation (NSF) Advanced Technological Education (ATE) National Resource Center. Certifications from CSSIA have no expiration date. CSSIA has earned seals of approval from the National Security Agency (NSA) and the Department of Homeland Security (DHS). GSU wanted to earn seals of approval from NSA and DHS. GSU wanted the new full-time University Lecturer to participate in achieving National Center of Academic Excellence standing for GSU. GSU wanted the new full-time University Lecturer to support course mapping to NSA's Committee on National Security Systems standards. Since Plaintiff received his IT Certifications from an institution (CSSIA) that has earned seals of approval from NSA and DHS, and since Plaintiff had taught at institutions that have earned seals from NSA and DHS (CSSIA at Moraine Valley Community College, and Lewis University), Plaintiff was familiar with NSA's Committee on National Security Systems standards. In addition, CSSIA at Moraine Valley Community College, and Lewis University were designated by the NSA/DHS as Centers of Academic Excellence. Mr. Manprisio did not receive his IT Certifications from institutions

that had earned seals of approval from NSA and DHS; nor did he teach at institutions that had earned seals of approval from NSA and DHS.

**ANSWER:** Defendant admits that the second minimum qualification listed on the job announcement was "Current Professional Certification in at least two of the following areas: MS Server, Cisco, IT Security, Virtualization, CISSP." Defendant admits that Manprisio had IT Certifications in IT Security, but did not have IT Certifications in MS Server, Cisco, Virtualization, or CISSP. Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff had an IT Certification in Information Assurance I (Security+), and a second IT Certification in Security Awareness (ITAA); Plaintiff received his IT Certifications through the Center for Systems Security and Information Assurance (CSSIA), which is a National Science Foundation (NSF) Advanced Technological Education (ATE) National Resource Center; certifications from CSSIA have no expiration date; and CSSIA has earned seals of approval from the National Security Agency (NSA) and the Department of Homeland Security (DHS). Defendant admits that earning seals of approval from NSA or DHS is one of several areas the GSU Computer Science Department has explored in developing its academic programs. Defendant admits that GSU considered whether full-time University Lecturer applicants participated in achieving National Center of Academic Excellence standing for GSU and supported course mapping to NSA's Committee on National Security Systems standards but denied that these were determinative factors in selection. Defendant lacks knowledge and information sufficient to form a belief as to the truth of whether since Plaintiff received his IT Certifications from an institution (CSSIA) that has earned seals of approval from NSA and DHS, and since Plaintiff had taught at institutions that have earned seals from NSA and DHS (CSSIA at Moraine Valley Community College, and Lewis University), Plaintiff was familiar with NSA's Committee on National Security Systems standards. Defendant lacks knowledge and information sufficient to form a belief as to the truth of whether CSSIA at Moraine Valley Community College, and Lewis University were designated by the NSA/DHS as Centers of Academic Excellence. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Mr. Manprisio received his IT Certifications from institutions that had earned seals of approval from NSA and DHS and whether he taught at institutions that had earned seals of approval from NSA and DHS. Defendant denies the remaining allegations in Paragraph 19.

20. Third, the job announcement stated, "Preference will be given to candidates who can teach and design courses in one or more of the following areas: Information Security and Assurance, Virtualization and Cloud Computing, Information Technology Management." This was listed as a "preferred qualification." Throughout GSU's hiring process relating to the full-time University Lecturer position (Exhibit 3), Plaintiff was more qualified than Mr. Manprisio in this category. With regards to teaching in these areas, both Plaintiff and Mr. Manprisio had taught courses in the first area mentioned, Information Security and Assurance. Neither Plaintiff nor Mr. Manprisio had taught a course in the second area mentioned, Virtualization and Cloud Computing. Both Plaintiff and Mr. Manprisio had taught courses in the third area mentioned, Information Technology Management. With regards to designing courses, Plaintiff had designed courses in the first area mentioned, Information Security and Assurance, and the third area mentioned, Information Technology Management. Specifically, Plaintiff had designed the

5

following courses at GSU and Moraine Valley Community College: Operating Systems; Foundation of Social Media; Scripting in Social Media; and Introduction to Microcomputers. Mr. Manprisio had no experience designing courses. Furthermore, Plaintiff had successfully completed an IT Certificate in Cloud Computing.

**ANSWER:** Defendant admits the job announcement stated, "Preference will be given to candidates who can teach and design courses in one or more of the following areas: Information Security and Assurance, Virtualization and Cloud Computing, Information Technology Management." Defendant admits that Manprisio taught courses in Information Security and Assurance. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff has taught a course in Virtualization and Cloud Computing. Defendant admits that Manprisio has not taught a class in Cloud Computing. Defendant admits that Manprisio taught courses in Information Technology Management. Defendant admits that Plaintiff designed a course in Social Media but lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff designed Operating Systems, Foundation of Social Media, Scripting in Social Media, and Introduction to Microcomputers at Moraine Valley Community College. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had successfully completed an IT Certificate in Cloud Computing. Defendant denies the remaining allegations in Paragraph 20.

21. Fourth, the job announcement asked for "Ongoing involvement in professional activities." This was listed as a "preferred qualification." Throughout GSU's hiring process relating to the full-time University Lecturer position (Exhibit 3), Plaintiff was qualified in this category. Since 2003, Plaintiff had regularly updated his Computer Science/Information Technology knowledge and skills by completing yearly trainings, seminars, and workshops. Plaintiff and Mr. Manprisio had both developed seminars, workshops, etc. for the academic community.

**ANSWER:** Defendant admits that the job announcement asked for "Ongoing involvement in professional activities." Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had regularly updated his Computer Science/Information Technology knowledge and skills by completing yearly trainings, seminars, and workshops since 2003. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff and Manprisio had both developed seminars, workshops, etc. for the academic community. Defendant denies the remaining allegations in paragraph 21.

22. Fifth, the job announcement asked for at least two years of teaching experience. This was listed as a "preferred qualification." Throughout GSU's hiring process relating to the full-time University Lecturer position (Exhibit 3), Plaintiff was more qualified than Mr. Manprisio in this category. Plaintiff had more teaching experience, and better teaching experience, than Mr. Manprisio. Plaintiff had 12 years of teaching experience at the college level, whereas Mr. Manprisio had five years of teaching experience at the college level. Plaintiff had been teaching at the college level since August 2002. He taught at Moraine Valley Community College from 2002 to 2005; the City Colleges of Chicago from 2002 to the present; Lewis University from 2006 to the present; and GSU from 2007 to the present. In contrast, Mr.

Manprisio began teaching at the college level in June 2009 (seven years after Plaintiff began teaching at the college level). Manprisio taught at DeVry University from June 2009 to May 2010; Joliet Junior College from January 2010 to May 2010; ITT Technical Institute from March 2010 to December 2014; and Westwood College from December 2012 to December 2014.

**ANSWER:** Defendant admits that the job announcement's preferred qualification stated, "Two years teaching experience is desirable." Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had 12 years of teaching experience at the college level, whether Plaintiff had been teaching at the college level since August 2002, and whether Plaintiff had taught at Moraine Valley Community College from 2002 to 2005, the City Colleges of Chicago from 2002 to present, and Lewis University from 2006 to present. Defendant admits that Plaintiff has been teaching at GSU since 2007 to present. Defendant admits that Manprisio had five years of teaching experience at the college level, that he had begun teaching at the college level in June 2009, that he taught at DeVry University from June 2009 to May 2010, Joliet Junior College from January 2010 to May 2010, ITT Technical Institute from March 2010 to December 2014, and Westwood College from December 2012 to December 2014. Defendant denies the remaining allegations in Paragraph 22.

23. All of Plaintiff's teaching experience was at regionally accredited institutions. Most of Mr. Manprisio's teaching experience was at institutions that were not regionally accredited. GSU is a regionally accredited institution.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of whether all of Plaintiff's teaching experience was at regionally accredited institutions. Defendant admits that Manprisio taught at both institutions that were regionally accredited and institutions that were not regionally accredited. Defendant admits that GSU is a regionally accredited institution. Defendant denies the remaining allegations in Paragraph 23.

24. Plaintiff had taught associate, undergraduate, and graduate level courses. (He had taught graduate level courses at GSU and Lewis University.) In contrast, Mr. Manprisio had taught only associate and undergraduate courses. Plaintiff had been teaching graduate level courses since 2007. All of Plaintiff's student evaluations from graduate students were good to excellent. Full-time University Lecturers at GSU are expected to teach graduate level courses.

**ANSWER:** Defendant admits that Plaintiff has taught undergraduate and graduate level courses at GSU since 2007 but lacks knowledge or information sufficient to form a belief as to the truth of whether he taught associate level courses or what he taught at Lewis University. Defendant admits that at the time that Manprisio was hired, he had taught undergraduate level courses. Defendant admits that generally Plaintiff received satisfactory or favorable student evaluations from graduate students. Defendant admits that full-time university lecturers teach graduate level courses at GSU. Defendant denies the remaining allegations in Paragraph 24.

25. Regarding the substance of their teaching, Plaintiff had taught courses in Mathematics, Computer Science, Information Technology, Information Security, and Business. In contrast, Mr. Manprisio had taught courses only in Business and Information Technology.

**ANSWER:** Defendant admits that Plaintiff had taught courses in Mathematics and Computer Science but lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had taught courses in Information Technology, Information Security, and Business. Defendant admits that Manprisio had taught courses in Business and Information Technology but denies that these are the only courses that he had taught.

26. Plaintiff had regularly received good to excellent student evaluations, recognition from students in various forms, and awards for his performance. Plaintiff's student evaluations, at all schools where he had taught, averaged scores in the high 80s to low 90s in percentage terms. Plaintiff's courses and the opportunities he brought to campus had been covered in GSU's student newspaper.

**ANSWER:** Defendant admits that GSU students taking Plaintiff's courses generally gave Plaintiff a satisfactory or favorable evaluation. Defendant admits that the GSU student newspaper covered one course that Plaintiff taught. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff regularly received good to excellent student evaluations at other schools and whether Plaintiff's students evaluations, at all schools where he had taught, averages scores in the high 80s to low 90s in percentage terms. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had regularly received recognition from students in various forms, or awards for his performance. Defendant denies the remaining allegations in Paragraph 26.

27. Plaintiff's classes had been in high demand and were sometimes over capacity. His classes had a high retention rate.

**ANSWER:** Defendant admits that many computer science classes at GSU are in high demand and are enrolled to the maximum number of students allowed for each class. Defendant lacks information or knowledge sufficient to form a belief as to the truth of whether Plaintiff's classes had a high retention rate. Defendant denies the remaining allegations in Paragraph 27.

28. Plaintiff and Mr. Manprisio had both taught face-to-face, blended (hybrid), and e-learning classes. However, Plaintiff had earned a Master's in Online Teaching from the University of Illinois at Urbana-Champaign. Manprisio had no degree in Online Teaching.

**ANSWER:** Defendant admits that Manprisio taught both face-to-face and blended (hybrid), and e-learning classes and that Manprisio did not have a degree in Online Teaching. Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had taught face-to-face, blended (hybrid), and e-learning classes and whether he earned a Master's in Online Teaching from the University of Illinois at Champaign-Urbana.

29. Full-time University Lecturers are required to teach eight courses per year. In contrast, Plaintiff had been teaching an extremely heavy course load. He had been teaching an average of sixteen classes per year since 2013.

**ANSWER:** Defendant denies that full-time University Lecturers are required to teach eight courses per year. Defendant denies that Plaintiff had been teaching an average of sixteen classes at GSU per year since 2013 but lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff was teaching an average of sixteen classes per year since 2013. Defendant denies the remaining allegations in Paragraph 29.

30. The job announcement made no mention of administrative experience, project management, information management, industrial experience, or Linux+.

**ANSWER:** Defendant admits that the job announcement does not explicitly mention administrative experience, project management, information management, industrial experience, or Linux+ but denies the remaining allegations in Paragraph 30.

31. Plaintiff had always been rated as meeting expectations on his performance reviews at GSU.

**ANSWER:** Admit.

32. Plaintiff had served the GSU community and the broader community. He had mentored students in GSU's Honors Program and General Program. He had helped GSU students obtain graduate assistantships, scholarships, internships, and jobs in the private and public sectors. He had served as a Master's Thesis/Project reader at GSU. He had used his professional network to bring guest speakers from the Federal Bureau of Investigation (FBI) and National Security Agency (NSA) to GSU. And he had worked with youth on Science, Technology, Engineering, and Mathematics (STEM) through the Institute of Electrical and Electronics Engineers (IEEE).

**ANSWER:** Defendant admits that Plaintiff mentored students in GSU's Honors Program, helped students identify and apply for internships, served as a member of a Masters student thesis project review committee, and brought a speaker in from the National Security Agency ("NSA") to have a teleconference with GSU students. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32.

33. On December 18, 2014, GSU gave the full-time University Lecturer position to Mr. Manprisio.

**ANSWER:** Defendant admits that GSU offered Manprisio a full-time University Lecturer position in December 2014 but denies the remaining allegations in Paragraph 33 .

34.     GSU was aware of Plaintiff's race, religion, national origin, and ancestry before GSU made the decision to give the position to Mr. Manprisio.  Since 2007, Plaintiff had discussions with various Computer Science Department members about his race, religion, national origin, and ancestry.  In addition, on June 6, 2012, then-Congressman Jesse Jackson, Jr. sent GSU a letter which stated that Plaintiff was a South Asian Muslim.  Furthermore, on March 16, 2014, Plaintiff's attorneys sent GSU a letter which stated that Plaintiff was a Muslim of Pakistani national origin.  On April 3, 2014, after receiving the letter from Plaintiff's attorneys, GSU Human Resource Officer Kristina Houston met with the Computer Science Department (except Plaintiff) to discuss Plaintiff's concerns about discrimination based on religion and national origin.  Plaintiff speaks English fluently with a South Asian, Pakistani accent.  Plaintiff's physical appearance indicates that he is South Asian.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff had discussions with various Computer Science Department members about his race, religion, national origin, and ancestry.  Defendant admits that GSU received a letter from Congressman Jesse Jackson, Jr. that stated that Plaintiff was a South Asian Muslim.  Defendant admits that GSU received a letter from Plaintiff's attorneys regarding discrimination based on race and religion.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether former GSU Human Resource Officer Kristina Houston met with the Computer Science Department (except Plaintiff) to discuss Plaintiff's concerns about discrimination based on religion and national origin.  Defendant admits that Plaintiff speaks English fluently.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff speaks with a South Asian, Pakistani accent and whether Plaintiff's physical appearance indicates that he is South Asian. Defendant denies the remaining allegations in Paragraph 34.

## COUNT I

**(Title VII - Race Discrimination, Religious Discrimination, National Origin Discrimination)**

35.     Paragraphs 1-34 are restated herein.

**ANSWER:**   Defendant incorporates herein by reference its answers to Paragraphs 1-34, as stated above.

36.     Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

**ANSWER:**   Deny.

37.     Defendant's unlawful actions have caused Plaintiff a lost promotion, lost pay and benefits, emotional distress, inconvenience, and other consequential damages.

**ANSWER:** Deny.

WHEREFORE Plaintiff respectfully requests:

A. Full-time University Lecturer position;
B. Lost pay and benefits;
C. Compensatory damages;
D. Attorney's fees and costs; and
E. Such other relief as law and justice allow.

**ANSWER:** Defendant denies that it violated any rights at any time or in any way and further denies that Plaintiff is entitled to any of the relief requested.

## COUNT II
### (Section 1981 - Ancestry Discrimination)

38. Paragraphs 1-37 are restated herein.

**ANSWER:** Defendant incorporates herein by reference its answers to Paragraphs 1-37, as stated above.

39. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 1981.

**ANSWER:** Deny.

40. Defendant's unlawful actions have caused Plaintiff a lost promotion, lost pay and benefits, emotional distress, inconvenience, and other consequential damages.

**ANSWER:** Deny.

WHEREFORE Plaintiff respectfully requests:

A. Full-time University Lecturer position;
B. Lost pay and benefits;
C. Compensatory damages;
D. Attorney's fees and costs; and
E. Such other relief as law and justice allow.

**ANSWER:** Defendant denies that it violated any rights at any time or in any way and further denies that Plaintiff is entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

11

1. The actions taken by Defendant with respect to Plaintiff were taken in good faith and without respect to Plaintiff's race, religion, national origin, or ancestry.

2. Plaintiff's allegations under Title VII are barred to the extent that they did not occur within 300 days of the filing of his EEOC charge of discrimination.

3. Plaintiff's allegations are barred to the extent they are not like or reasonably related to the filing of her charge of discrimination.

4. Plaintiff's claims fail to the extent they are barred by the applicable statute of limitations.

5. Defendant reserves the right to assert additional affirmative defenses as they are identified during discovery.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

*/s/ Allison P. Sues*
ALLISON P. SUES
Assistant Attorney General
Office of the Illinois Attorney General
General Law Bureau
100 W. Randolph St., 13th Flr.
Chicago, Illinois 60601
(312) 814-6534

## **CERTIFICATE OF SERVICE**

I, Allison P. Sues, an attorney on behalf of the Defendant, certify that copy of Defendant's Answer to Plaintiff's Complaint to the following individuals via CM/ECF on October 22, 2015:

| | |
|---|---|
| Kamran Memon, Esq, <br> LAW OFFICES OF KAMRAN MEMON <br> 200 S. Michigan Ave., Suite 201 <br> Chicago, Illinois 60604 | Janaan Hashim, Esq. <br> AURAL LAW GROUP, LLC <br> 225 W. Washington Boulevard, Suite 2200 <br> Chicago, Illinois 60606 |

                                                  */s/ Allison P. Sues*