IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Aslam Shahid, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Blakey |
| v. | ) | |
| | ) | 15 C 8330 |
| Governors State University, | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**
**(Civil Rights and Employment Discrimination)**

**Introduction**

1. Plaintiff Aslam "Sam" Shahid seeks redress for religious discrimination, racial, national origin, and ancestry discrimination. This case is brought for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981.

**Jurisdiction**

2. Jurisdiction of this Court is provided by 28 U.S.C. §§ 1331 and 1343.

3. On February 12, 2015, Plaintiff timely filed a charge of racial discrimination, religious discrimination, and national origin discrimination with the EEOC. (See Exhibit 1.)

4. On June 25, 2015, Plaintiff received a Notice of Right To Sue. (See Exhibit 2.)

5. Venue is proper in this judicial district because the Defendant resides here, and all of the events occurred here.

**The Parties**

6. Plaintiff is a South Asian Muslim of Pakistani national origin. He worked for Defendant in the Northern District of Illinois.

1

7. Defendant, Governors State University ("GSU"), is an Illinois state university doing business in the Northern District of Illinois. At all relevant times, Defendant has had more than 500 employees.

**Facts Upon Which Claims Are Based**

8. Plaintiff has been teaching Information Technology ("IT") at the college level since 2002. Plaintiff has been teaching Computer Science at the college level since 2006.

9. Plaintiff began working for GSU in 2007 as an Adjunct Professor in GSU's Computer Science Department. During his interview for the Adjunct Professor position, Plaintiff showed his IT Certification in Information Assurance I (Security+), and a second IT Certification in Security Awareness (ITAA), to Dr. Shih and Dr. D'Arcy. At that time, Dr. D'Arcy was the Chair of the Science Division, and Dr. Shih was a Professor in the Computer Science Department. The Computer Science Department was part of the Science Division. Based in part on his IT Certifications, Plaintiff was hired to teach undergraduate and graduate courses at GSU starting in 2007. Dr. D'Arcy was reluctant to hire Plaintiff to teach graduate courses until she saw his IT Certifications.

10. Plaintiff became a part-time University Lecturer in GSU's Computer Science Department in 2010.

11. Since 2007, Plaintiff has been the only Muslim working in GSU's Computer Science Department.

12. Since 2007, no other employees in GSU's Computer Science Department have self-identified themselves as being Muslim.

13. Since 2007, Plaintiff has been the only person of South Asian race or ancestry or Pakistani national origin working in the GSU's Computer Science Department.

14. Since 2007, no other employees in GSU's Computer Science Department have self-identified themselves as being of South Asian race or ancestry or Pakistani national origin.

15. In October 2014, GSU posted a job announcement for a full-time position in the Computer Science Department: University Lecturer, Information Technology. (See Exhibit 3.) Plaintiff applied for that position.

16. Richard Manprisio also applied for the position. He is White, non-Muslim, non-Pakistani.

17. GSU selected Plaintiff to interview for the position, because he satisfied the "minimum qualifications" listed on the job announcement.

18. The first requirement listed on the job announcement was a "Master's Degree in Computer Science, Information Technology, or related field." This was listed as a "minimum qualification." Plaintiff was more qualified than Mr. Manprisio in this category. Plaintiff received his Master's in Computer Science from GSU in 2002. Mr. Manprisio did not have a Master's in Computer Science or Information Technology; he had a Master's in Project Management. A Master's in Project Management degree has nothing substantively to do with Computer Science or IT; thus, Mr. Manprisio's degree was not in a "related field."

19. The second requirement listed on the job announcement was "Current Professional Certification in at least two of the following areas: MS Server, Cisco, IT Security, Virtualization, CISSP." This was listed as a "minimum qualification." Both candidates were equally qualified in this category. They both had IT Certifications in IT Security, but neither had IT Certifications in MS Server, Cisco, Virtualization, or CISSP. Plaintiff had an IT Certification in Information Assurance I (Security+), and a second IT Certification in Security Awareness (ITAA). (See Exhibit 4.) Plaintiff received his IT Certifications through the Center for Systems Security and Information Assurance (CSSIA), which is a National

Science Foundation (NSF) Advanced Technological Education (ATE) National Resource Center. Certifications from CSSIA have no expiration date. CSSIA has earned seals of approval from the National Security Agency (NSA) and the Department of Homeland Security (DHS). GSU wanted to earn seals of approval from NSA and DHS. GSU wanted the new full-time University Lecturer to participate in achieving National Center of Academic Excellence standing for GSU. GSU wanted the new full-time University Lecturer to support course mapping to NSA's Committee on National Security Systems standards. Since Plaintiff received his IT Certifications from an institution (CSSIA) that has earned seals of approval from NSA and DHS, and since Plaintiff had taught at institutions that have earned seals from NSA and DHS (CSSIA at Moraine Valley Community College, and Lewis University), Plaintiff was familiar with NSA's Committee on National Security Systems standards. In addition, CSSIA at Moraine Valley Community College, and Lewis University were designated by the NSA/DHS as Centers of Academic Excellence. Mr. Manprisio did not receive his IT Certifications from institutions that had earned seals of approval from NSA and DHS; nor did he teach at institutions that had earned seals of approval from NSA and DHS.

20. Third, the job announcement stated, "Preference will be given to candidates who can teach and design courses in one or more of the following areas: Information Security and Assurance, Virtualization and Cloud Computing, Information Technology Management." This was listed as a "preferred qualification." Plaintiff was more qualified than Mr. Manprisio in this category. With regards to teaching in these areas, both Plaintiff and Mr. Manprisio had taught courses in the first area mentioned, Information Security and Assurance. Neither Plaintiff nor Mr. Manprisio had taught a course in the second area

mentioned, Virtualization and Cloud Computing. Both Plaintiff and Mr. Manprisio had taught courses in the third area mentioned, Information Technology Management. With regards to designing courses, Plaintiff had designed courses in the first area mentioned, Information Security and Assurance, and the third area mentioned, Information Technology Management. Specifically, Plaintiff had designed the following courses at GSU and Moraine Valley Community College: Operating Systems; Foundation of Social Media; Scripting in Social Media; and Introduction to Microcomputers. Mr. Manprisio had no experience designing courses. Furthermore, Plaintiff had successfully completed an IT Certificate in Cloud Computing.

21. Fourth, the job announcement asked for "Ongoing involvement in professional activities." This was listed as a "preferred qualification." Plaintiff was qualified in this category. Since 2003, Plaintiff had regularly updated his Computer Science/Information Technology knowledge and skills by completing yearly trainings, seminars, and workshops. Plaintiff and Mr. Manprisio had both developed seminars, workshops, etc. for the academic community.

22. Fifth, the job announcement asked for at least two years of teaching experience. This was listed as a "preferred qualification." Plaintiff was more qualified than Mr. Manprisio in this category. Plaintiff had more teaching experience, and better teaching experience, than Mr. Manprisio. Plaintiff had 12 years of teaching experience at the college level, whereas Mr. Manprisio had five years of teaching experience at the college level. Plaintiff had been teaching at the college level since August 2002. He taught at Moraine Valley Community College from 2002 to 2005. He taught at the City Colleges of Chicago from 2002 to the present. He taught at Lewis University from 2006 to the present. He taught at GSU from 2007 to the present. In contrast, Mr. Manprisio began teaching at the college level in June

2009 (seven years after Plaintiff began teaching at the college level). Manprisio taught at DeVry University from June 2009 to May 2010; Joliet Junior College from January 2010 to May 2010; ITT Technical Institute from March 2010 to December 2014; and Westwood College from December 2012 to December 2014.

23. All of Plaintiff's teaching experience was at regionally accredited institutions. Most of Mr. Manprisio's teaching experience was at institutions that were not regionally accredited. GSU is a regionally accredited institution.

24. Plaintiff had taught associate, undergraduate, and graduate level courses. (He had taught graduate level courses at GSU and Lewis University.) In contrast, Mr. Manprisio had taught only associate and undergraduate courses. Plaintiff had been teaching graduate level courses since 2007. All of Plaintiff's student evaluations from graduate students were good to excellent. Full-time University Lecturers at GSU are expected to teach graduate level courses.

25. Regarding the substance of their teaching, Plaintiff had taught courses in Mathematics, Computer Science, Information Technology, Information Security, and Business. In contrast, Mr. Manprisio had taught courses only in Business and Information Technology.

26. Plaintiff had regularly received good student evaluations, recognition from students, and awards. Plaintiff's student evaluations, at all schools where he had taught, averaged scores in the high 80s to low 90s in percentage terms. Plaintiff's courses and the opportunities he brought to campus had been covered in GSU's student newspaper.

27. Plaintiff's classes had been in high demand and were sometimes over capacity. His classes had a high retention rate.

6

28. Plaintiff and Mr. Manprisio had both taught face-to-face, blended (hybrid), and e-learning classes. However, Plaintiff had earned a Master Online Teacher Certificate from the University of Illinois and the Illinois Online Network. Manprisio has no degree or certificate in Online Teaching.

29. Full-time University Lecturers in GSU's Computer Science Department are required to teach eight courses per year. In contrast, Plaintiff had been teaching an extremely heavy course load. He had been teaching an average of sixteen classes per year since 2013.

30. The job announcement made no mention of administrative experience, project management, information management, industrial experience, or Linux+.

31. Plaintiff had always been rated as meeting expectations on his performance reviews at GSU.

32. Plaintiff had served the GSU community and the broader community. He had mentored students in GSU's Honors Program and General Program. He had helped GSU students obtain graduate assistantships, scholarships, internships, and jobs in the private and public sectors. He had served as a Master's Thesis/Project reader at GSU. He had used his professional network to bring guest speakers from the Federal Bureau of Investigation (FBI) and National Security Agency (NSA) to GSU. And he had worked with youth on Science, Technology, Engineering, and Mathematics (STEM) through the Institute of Electrical and Electronics Engineers (IEEE).

33. On December 18, 2014, GSU gave the full-time University Lecturer position to Mr. Manprisio.

34. GSU was aware of Plaintiff's race, religion, national origin, and ancestry before GSU made the decision to give the position to Mr. Manprisio. Since 2007, Plaintiff has had discussions with various Computer Science Department members about his race, religion, national origin,

7

and ancestry. In addition, on June 6, 2012, then-Congressman Jesse Jackson, Jr. sent GSU a letter which stated that Plaintiff was a South Asian Muslim. Furthermore, on March 16, 2014, Plaintiff's attorneys sent GSU a letter which stated that Plaintiff was a South Asian Muslim. On April 3, 2014, after receiving the letter from Plaintiff's attorneys, Kristina Houston from GSU's HR Department met with the Computer Science Department (except Plaintiff) to discuss Plaintiff's concerns about discrimination based on religion and national origin. Plaintiff speaks English fluently with a South Asian, Pakistani accent. Plaintiff's physical appearance indicates that he is South Asian.

## COUNT I

**(Title VII – Race Discrimination, Religious Discrimination, National Origin Discrimination)**

35. Paragraphs 1-34 are restated herein.

36. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

37. Defendant's unlawful actions have caused Plaintiff lost pay and benefits, emotional distress, inconvenience, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

    A.    Lost pay and benefits;

    B.    Compensatory damages;

    C.    Attorney's fees and costs; and

    D.    Such other relief as law and justice allow.

## COUNT II

**(Section 1981 – Ancestry Discrimination)**

38. Paragraphs 1-37 are restated herein.

39. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 1981.

40. Defendant's unlawful actions have caused Plaintiff lost pay and benefits, emotional distress, inconvenience, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

    A. Lost pay and benefits;

    B. Compensatory damages;

    C. Attorney's fees and costs; and

    D. Such other relief as law and justice allow.

Respectfully Submitted,

*/s/ **Kamran Memon***

_____
Plaintiff's Attorney

Kamran Memon
Law Offices of Kamran Memon
200 S. Michigan Ave.
Suite 201
Chicago, IL 60604
(312) 961-2354

Janaan Hashim
Amal Law Group, LLC
225 W. Washington Boulevard
Suite 2200
Chicago, Illinois  60606